*George W. Jolly, for appellant.*

---

EDWARD HESSEY'S EX'R *v.* ELIZABETH C. HESSEY.

ELIZABETH C. HESSEY *v.* EDWARD HESSEY'S EX'R, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—424.]

**Liability of Executor and His Sureties.**

Where by the terms of a will the interest from a certain sum of money is given to the widow, said sum being given to a husband and wife in a foreign state, and by agreement between said widow and the owners of the fund it is agreed that the husband shall take such money, not as trustee but as owner, and pay the widow the interest each year, and such fund never came into the hands of the executor of the will, he and his sureties are not liable to account therefor, upon the holder and owner of such fund becoming bankrupt.

APPEALS FROM BULLITT CIRCUIT COURT.

November 26, 1880.

OPINION BY JUDGE PRYOR:

Without discussing the various questions made by counsel for the appellant it is evident that the agreement under which the husband of the appellant retained the control of the trust fund precludes her from asserting any claim against the Kentucky executor or trustee and his sureties. The acts of the executors as such terminated with the settlement and distribution of the estate as provided by the will,

and the liability of the sureties on the executors' bond ended at the same time.

The husband of the appellant held this money as trustee only so far as the claim of the widow of the testator could be asserted. The trust was created for her benefit alone, and her consent or surrender of her interest even to the appellant would, if free from fraud or improper influences, have been binding upon her. She was entitled to the interest as long as she lived, and the principal belonged to the appellant and her husband to do as they pleased with. The two could have transferred or sold their interest at any time, and there is no doubt but the husband on the death of the wife, would have been entitled as survivor to her part of the fund. There are no words of exclusion or any separate estate created by the language of the will that would deprive the husband of his right to control it, and when the division of the estate took place, and the agreement was made that the husband and the wife, or the husband for the wife, should take this fund to which they were entitled and pay the interest, it ended the liability of Showalton, if ever liable, to account for a trust fund that had never come into his possession and could not have been reduced to possession against the will of the husband of the appellant, who held it in another state and was also trustee.

There was nothing improper or unreasonable in the husband of the appellant taking the sole control of the money, not as trustee, but as his own, by the consent of the wife, and agreeing to pay the widow the annual interest due. The widow, or any one representing her, is not complaining of this agreement by which she was to look to the husband of the appellant for her money. Showalton had accounted for all the moneys that came into his hands, and when the husband of the appellant became a bankrupt, Showalton, finding that he was indebted to the widow on account of interest and that some of the legatees had not been paid, presented the claim to the extent of the fund received by appellant and her husband as a claim against the bankrupt's estate, and received as his pro rata share the sum of $2,343.38. He doubtless then thought he was liable to the widow and perhaps for the whole fund; still, an acknowledged liability in express terms would not bind him unless in fact and in law this liability existed.

Having received the fund and it not being sufficient to pay the interest due the widow and the unpaid legatees, it is certain that the appellant had no right to any part of it until their claims were

satisfied. She held subordinate to the claims of the legatees and the widow, and they should be paid before the appellant was entitled to any part of it. They had accepted the fund and it was surrendered with the obligation of the husband of the appellant to pay the interest, and the fund having been presented to the assignee in bankruptcy and the dividend paid the widow should be entitled, certainly, before those whose duty it was to pay it. This fund constituting the balance of the estate after the payment of legacies, the legatees have a prior claim to the appellant. There is no question raised here as to any preference between the widow and the legatees.

The agreement upon which this opinion is based is clearly established by Showalton, Ellaby, Hobbs and others, and independently of the agreement we are not then satisfied that any liability whatever existed on the part of Showalton to the appellant. Her husband had this fund in Illinois when the testator died. He used and controlled it as his own and had this right so long as the widow, who alone was interested, permitted him to do so. The Kentucky trustee never saw or handled the fund. It never was within the jurisdiction of the court, and under such circumstances it would be a harsh rule of either law or equity that would make the faithful trustee account to the recusant trustee for the results of the latter's recklessness in the management of the estate. Such would be in effect the judgment if the appellee were made liable to the appellant.

The judgment is *affirmed* as to the appellant, Elizabeth C. Hessey, and is *reversed* on the appeal of Showalton with directions to dismiss the case in so far as Elizabeth C. Hessey seeks a judgment, in the event the dividend from the bankrupt's estate is insufficient to pay the legatees and the interest due the widow.

, R. J. Meyler, F. P. Straus, W. R. Thompson, Badger & English, for Hessey's Ex'r.

R. H. Field, Mann, Calhoun & Frazier, for Elizabeth C. Hessey.